We're going to go on to Case 15-17-20, Hively v. Ivy Tech, but we'll wait until everyone leaves. Mr. Nevins, hello. Good morning, Your Honor, and may it please the Court. I am Greg Nevins from the Lemba Legal Defense Fund. I have the privilege of representing Ms. Hively in this appeal. I think it's important to note at the outset what Ivy Tech is and is not arguing in this case. We set out the applicable standard, as this Court set out in the Shepard case, for what is sex discrimination. So long as the plaintiff demonstrates in some manner that he would not have been treated in the same way had he been a woman, he has proven sex discrimination. Nor could they challenge that, because it's essentially just a reiteration of what the Supreme Court said in Manhart, which is that calling sex discrimination, quote, treatment of a person in a manner which but for that person's sex would be different, close quote. And nor do they quibble with the fact that Ms. Hively obviously satisfies that standard, and that she as a woman was discriminated against because of her attraction to and intimate relations with women, whereas men who were attracted to and had intimate relations with women were not so treated. What they do argue is that this Court and others have recognized an exception to the general standard of Manhart and Shepard for cases in which, quote, would have the ultimate effect of adding sexual orientation to the statute or would result, quote,  And I think we can assume that that is essentially what the net effect of our argument would be. But where they get it wrong is when they say it is no different than asking this Court to add the words sexual orientation to the statute, because the Supreme Court has said emphatically that the courts are to look at or to apply the words of the statute, and if that has either the effect, the unintended consequence or undesirable consequence of adding something that Congress didn't intend to or creating additional litigation, that's what Congress decided, and that's for them to deal with. Well, perhaps this is an unfair question, but isn't the best solution here to have Congress fix this problem? Well, the question, and I would respectfully submit, and I do mean respectfully, that this is a problem that the courts of appeals have created without being faithful to the statute that was actually passed. And here, there is no statute to fix. I mean, this is discrimination because of sex, and the fact that it hasn't been recognized as such and the fact that the obvious parallels is no reason why you should perpetuate an incorrect reading of the law. And basically, what the court said in on-call was that you don't look at what Congress intended to cover in 1964, and there is no authority for the notion that just looking at what Congress has not done in response to the courts of appeals decision is a reason to keep adhering to an incorrect interpretation of the statute. Is there any factual allegation that Hively was involved in a relationship with a woman that others may have known about? Your Honor, no, there isn't. And I respectfully submit that here, there was no reason for her to ask for or for the court below to grant leave to amend to add that, given this court's existing precedent. So I think what I would respectfully submit is that when you look at what this court decided in the Swanson case a while back, when it talked about what constitutes discrimination, that this satisfies that standard. And if there's any question about whether or not anything further would be proper in an amendment, that she should be allowed to do that. I would also say that this court specifically has precedent that says that the degree of the intensity of the relationship that's at issue, and this is in the interracial context, is not part of what Title VII is concerned with. In other words, if you are discriminated against because you have interracial friendships or interracial relationships or interracial marriage, the degree does not matter whatsoever. It may affect the ability to prove the claim because, obviously, the idea that someone's going to be discriminated against because of an interracial friendship seems much more remote than interracial marriage. But Title VII is only concerned with, are you discriminated against because of your race or your sex? And that's satisfied in those contexts there, and it's also satisfied in this context here. You know, the athletes raised an interesting point in a footnote. If we say that Ms. Hively was discriminated against on the basis of sex because had she been a man attracted to women, she would not have suffered adverse consequences, then what would we do about an employee who was fired for being bisexual? I thought that was an interesting... Your Honor, I agree in that, and I don't think the court needs to reach that. I mean, there certainly is the fact that it is a stereotype not only that men are attracted to women, but also the stereotype is that men are attracted only to women. So in that sense, that person would be violating that same gender norm, would be violating a similar gender norm. But I would also point out that that argument actually works against them in the sense that they argue, they talk about the Employment Non-Discrimination Act, which would clearly cover the bisexual situation, and now they're arguing, well, that this is something different here. But I think the overarching point is that probably that would cover that situation, but that any differences between those two is not something of a particular concern. Again, I think when you're looking at which analogies are the most compelling, I think the analogy to the interracial relationship context, in which courts have unanimously condemned discrimination on that front for over 30 years, holds here. And when you look at the distinctions that were attempted to be drawn there, I think you'll find that they simply don't hold water. And especially, one thing that Ivy Tech said that is true, it talks about the specific race concerns that animated the passage of Title VII. But when you look at what the court did in Meritor, there it faced the situation where it was unquestionable that racial harassment should not be tolerated and was covered by Title VII. And employers basically said, well, we don't have any concern about allowing people to bring cases where they say that there was unwelcome racial harassment, because, of course, almost all racial harassment is going to be unwelcome. But you can't possibly treat this in a parallel situation. You can't say that you couldn't possibly do that and make sexual harassment parallel to that. And the court said, absolutely we can. They said that is the exact concern that you're talking about, treating sex and race parallel, was raised on the floor of the House during the debates. And that concern was overruled, and they passed it using parallel language. And we can and we will treat all of the classifications the same. So there's no coherent reason being offered why it would be treated differently here. Again, and also I'd say that while they said that there was no supporting case law for our authority, I would point out that we did cite several cases that actually accept the interracial analogy. I would also point out that the decision of the EEOC in the Baldwin case, which came out in July, authoritatively discusses the analogy. And that case, I think, is deserving of at least Skidmore deference by this court. It very thoroughly sets out and looks at Supreme Court precedent as to why this sex discrimination analogy is sex discrimination here. And most importantly, it frames the issue here precisely, which is that so many of the courts that have gone down the road that they have have not talked about what sex discrimination is. Instead, they have insisted on whatever else it is, it doesn't cover sexual orientation discrimination. And by not asking the fundamental question of what sex discrimination is, they've gone down the wrong road. And what they have essentially, in effect, done is engraft a judicial exception that whatever else sex discrimination is, it doesn't cover sexual orientation discrimination. And that's exactly what the Congress did in 1990 in passing the Americans with Disabilities Act. Within a year later, in 1991, when it addressed Price Waterhouse, the mixed motive part of Price Waterhouse, it didn't pass the same exception when it came to Title VII. It did not carve out the rule. What it said with the Americans with Disabilities Act is that whatever else a disability is, it doesn't cover being a transsexual and it doesn't cover homosexuality. And yet a year later, they didn't carve out the same exception with Title VII, which is the last major amendment to Title VII. And we know from the Nassar case that the Supreme Court said that whatever is passed in the Americans with Disabilities Act of 1990 but not passed in the Civil Rights Act of 1991 shows Congress's intent not to incorporate an exclusion in 1990 when it didn't do the same thing in 1991. And that's all the more the case in the light of the Price Waterhouse decision, which clearly, with its gender stereotyping holding, did have obvious implications for sexual orientation discrimination. If there aren't any more questions, if I could just reserve the remainder of my time. That would be great. Great, thank you. Thank you. I always feel that the lawyers often don't reserve enough rebuttal time. Okay, Mr. Maley. Yes, good morning, Your Honor. May it please the Court. My name is John Maley from Indiana, representing Ivy Tech Community College, based in South Bend in this case. Respectfully, Your Honors, this case is one in which the Court, as acknowledged by counsel, has already decided this issue. Counsel suggested that the courts of appeals have gotten it wrong. But, in fact, as a matter of stare decisis, this Court, starting with the 1984 decision in U Lane, the Hamner decision in 2000, the Ham decision in 2003, and several others, has addressed this issue, consistent with every other circuit in the country, has concluded that sexual orientation is not within the protections of Title VII. Now, I understand not wanting to expand a federal statute based on perceived public opinion, but is it possible that the federal Title VII statute was initially narrowed improperly based on perceived public opinion? And this really is a bottom line question for me. Is there a disconnect between the fact that gay men and lesbians can get married but can get fired from their livelihood for doing so? Respectfully, there is not, Your Honor. Now, in terms of policy, the proposal has been made to Congress repeatedly. It's one that our client agrees with. Our client has a policy against discrimination on sexual orientation, but Congress has not included sexual orientation in the statute. That's a matter of policy compared to the fundamental right of marriage, which is constitutional and the Supreme Court decided. Congress, Your Honor mentioned that the best solution to the problem here would be Congress addressing this, and we agree with that. In fact, that has been presented to Congress multiple times, and Congress knows how to use the term sexual orientation. For instance, in the Hate Crimes Statistics Act of 1990, 28 U.S.C. Section 534, sexual orientation is there and it is required to be reported upon when there are crimes based on sexual orientation. Likewise, the Hate Crimes Act, 18 U.S.C. 249A2, uses the term and makes it a crime to commit a crime involving based on sexual orientation. I want to go back to the fact that, look, gay marriage is important, but employment is the means to food, the means to housing, clothes on one's back, education. It's vital to life itself. It just seems incongruous to imagine a country where federal law requires all states to permit gay marriage but will not protect these same people from being fired for being gay. Your Honor, I appreciate that sentiment and I have to share it personally, but the marriage right is a fundamental constitutional right. This, we're interpreting Title VII, as this Court has interpreted and every other circuit has interpreted. And even the Supreme Court, in the Uncollie decision, makes it clear that the test is whether members of one's sex are exposed to disadvantaged terms of employment to which members of the other sex are not exposed. It is not an orientation statute. President Obama just changed this by executive order in 2014 as to federal employees, adding the term sexual orientation. And in terms of social norms changing, Your Honor, certainly the public policy argument is strong now and one would predict that it's going to change, the statute's likely to change, but that, as this Court has said repeatedly, is for Congress, that branch of the three branches of government, not this branch of government. What about the Shepard case from this circuit, which states that so long as the plaintiff demonstrates in some manner that he would not have been treated in the same way had he been a woman, he has proven sex discrimination. That sounds like it would cover discrimination based on a woman's sexual orientation toward other women, doesn't it? Your Honor, interestingly, this Court has otherwise expressly said that sexual orientation is not protected. And also, notably, in this particular case that we have here, and Your Honor noted this, the complaint, using the current Iqbal and Twombly standards from the Supreme Court, simply alleges that not promoted because of sexual orientation. There's no further indication even what that sexual orientation might be. So for this Court to make that leap on this record would be improper. There may be some other case someday. Lastly, I want to just briefly... So you think we should remand? No, I respectfully do not, Your Honor, because in this case the motion to amend was added actually to add Ivy Tech's policies and to bring about a state law claim, and the district court, Judge Lozano, properly denied that. But there was never any attempt, and plaintiff is bound by the complaint, as this Court has held. Lastly, I just want to comment on sovereign immunity. The complaint alleges and seeks damages. Our client is an arm of the state and thus is governed and protected by the 11th Amendment. And the 11th Amendment in this Court has held, and there's precedent otherwise, that the ADEA, age claims, and Americans with Disabilities Act disability claims, that the state's 11th Amendment rights have not been abrogated. And so if this Court were to create, add to the statute effectively, as counsel meant it, the net effect would be to add the word sexual orientation. There would now be, without any congressional findings or deliberation or determination that there's been a need for protection, suddenly this abrogation of the state's and Ivy Tech's 11th Amendment rights. All the more reason, Your Honor, that this case and this Court are not the proper forum to do what many would echo your sentiments, Your Honor, that the policy and the statute should be changed, but not by judicial fiat. Why would Title VII protect the white woman married to an African-American man, but not the woman married to a woman? Can you help me with that? Sure. Yes, Your Honor. Again, first, in this case, we don't know what the orientation is. It's not claimed. It's not alleged or pleaded what the orientation is. Secondly, the protection has to be based on the protected trait of sex, and that, consistently, the courts have held, is not orientation. For instance, under plaintiff's theory, let's say at Ivy Tech that a male associated with a female and were discriminated as a result of that, that that would somehow be actional. That's not what Congress intended, and the Court consistently, this Court and every other circuit, has focused on that the statute is intended to protect gender, being male, being female, and to take the leap that plaintiffs suggest would do what the Employment Non-Discrimination Act tries to do and may well be successful someday, is bring about sex-gender-based association protection, and it doesn't exist presently for sexual orientation. In your string of sites of circuits on page 11 of your brief, I notice that the ninth is missing. Where is the ninth on this? Yes, Your Honor, the ninth in DeSantis in 1979, and this may not be cited in that particular part of the brief, but as I was reviewing all the cases, and there have been, I think, 170 cases cited among the parties, none of which hold that sexual orientation from the circuit or Supreme Court is protected. In DeSantis, 1979, the Ninth Circuit said that Title VII does not protect sexual preference. To my knowledge, there's no circuit that has said sexual orientation is protected. So respectfully, we request that the decision below be affirmed. It was proper within this Court's precedent, and this Court's precedents are correct and consistent with the statute and Supreme Court precedent. Thank you very much for your time, Your Honor. Thank you very much, Mr. Malley. Okay, Mr. Nevins. Thank you. Your Honor, if I could return to a few of your points and put them in a doctrinal framework, I think that your point regarding marriage is apt, and here's where I think it fits into the framework here. What we have here in the courts is an inexplicable theoretical reason to treat same-sex attraction different from all other traits. In other words, a woman who wears flannel shirts and jeans every day, you can't fire her for that gender norm differential. But you can under a lot of circuits for the gender nonconforming behavior of being attracted to women. Why is that?  There was the notion that absolutely sexual orientation was beyond the pale. Lawrence v. Texas hadn't been decided. So I think that contributed to this artificial distinction where same-sex attraction as a gender nonconforming trait was going to be treated differently than all others. We now can see that that shouldn't be the case. We now understand that after Lawrence v. Texas and after Obergefell, that it's not such a, quite honestly, such a strange and different situation. So I think that can bring us back to now really realizing that the differential treatment of one trait from all other ones, in other words, you can't discriminate against a man for having a trait when a woman having that trait is perfectly fine with you. Now we should see that that should have a universal application and that there shouldn't be a sexual orientation differential. As far as the appropriateness, as far as Congress hopefully passing explicit protections, I think I share in the courts and opposing counsels. But I'm reminded of what Solicitor General Donner really said in the King v. Burwell argument about Obamacare when Justice Scalia said, well, shouldn't we just leave it to Congress to fix this problem? And he said, this Congress? And there was obvious laughter at that. But the point is, and we cited Judge Easterbrook's article about why you shouldn't give undue weight to congressional inaction. Because there are a whole bunch of reasons why a subsequent Congress might not try to remedy an incorrect interpretation of the law. First off, if you allow that to carry the day, you are giving, in effect, a legislative veto to one House of Congress. I mean, the Employment Non-Discrimination Act passed 2 to 1 in the Senate in November of 2013. And John Boehner said, we're not going to bring it to the floor in the House because people are already protected. So there could be any number of reasons why a subsequent Congress doesn't act to create, to correct a judicial misinterpretation. And that's all the more the case when that interpretation has not been one from the U.S. Supreme Court. When the U.S. Supreme Court, I mean, you can look at a couple of cases. We certainly cited the example of the mixed-motive interpretation that almost every court got wrong, but it wasn't until the Supreme Court got wrong that Congress chose to act. Also, we saw in the Desert Palace case that there were questions, does a mixed-motive rule require direct evidence? The Four Circuits, other than the Ninth Circuit, all got it wrong. Then the Ninth Circuit took it up, and they got it right. And the Supreme Court took that case up and affirmed it. And I respectfully hope that history repeats itself and that this court becomes the first court to actually correctly interpret the meaning of discrimination because of sex. And then if it goes up, the Supreme Court can actually affirm this court and then return Title VII to its literal meaning, where all discrimination because of an individual's sex is prescribed. Are there any further questions? I'll submit the case. Thank you so very much. And thank you so very much. And the case will be taken under advisement. Thank you.